## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SHARINA O'NEAL,

    Plaintiff,

    v.

WASTE MANAGEMENT OF ILLINOIS, INC.,
WASTE MANAGEMENT INC., and DONTE
LOVE,

    Defendants.

Case No. 24 CV 6051

Judge Georgia N. Alexakis

### MEMORANDUM OPINION AND ORDER

Plaintiff Sharina O'Neal says she was sexually harassed by her workplace supervisor, Donte Love. In this action, she sues Love and the two entities that O'Neal maintains employed her, Waste Management of Illinois ("WMIL") and Waste Management Inc. ("WMI"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII"), the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* ("IHRA"), and the Illinois Gender Violence Act ("IGVA"), 740 ILCS 82/1 *et seq.* ("IGVA"). O'Neal also brings state law tort claims for assault and battery. WMI has moved to dismiss the suit for lack of personal jurisdiction and failure to state a claim. WMIL has moved to dismiss O'Neal's IGVA claim for failure to state a claim.

For the reasons set forth below, the motions are granted in part and denied in part.

LEGAL STANDARDS

**A. Rule 12(b)(2)**

"[A] federal court sitting in Illinois may exercise jurisdiction over [the defendants] in this case only if authorized both by Illinois law and by the United States Constitution." *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing Fed. R. Civ. P. 4(k)(1)(A)). "[T]he Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *Tamburo v. Dworkin*, 601 F.3d 693, 697 (7th Cir. 2010) (citing 735 ILCS 5/2–209(c)). The question for this Court, then, is "whether the exercise of personal jurisdiction over the defendants 'comports with the limits imposed by federal due process.'" *Curry v. Revolution Lab's, LLC*, 949 F.3d 385, 393 (7th Cir. 2020) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

For a court's exercise of personal jurisdiction over a party to comport with federal due process, a defendant must have had "minimum contacts … such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). A defendant's physical presence in a forum state is not required. *See Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). Nonetheless, "there must be sufficient minimum contacts such that he or she 'should reasonably anticipate being haled into court there.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

"The plaintiff need not include facts alleging personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears

2

the burden of demonstrating the existence of jurisdiction.'" *Curry*, 949 F.3d at 392 (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).

Where the district court rules on a defendant's motion to dismiss without an evidentiary hearing, "the plaintiff bears only the burden of making a prima facie case for personal jurisdiction." *Id.* at 392–93 (quoting *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423 (7th Cir. 2010)). Here, the parties—most significantly, defendants—have not requested an evidentiary hearing. The Court will therefore take O'Neal's "asserted facts as true and resolve any factual disputes in [her] favor." *uBID*, 623 F.3d at 423–24.

### B. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need only contain factual allegations that, accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At the pleading stage, a court must "accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Vill. of*

*Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). But "allegations in the form of legal conclusions are insufficient." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## BACKGROUND

For the purposes of defendants' motion to dismiss for failure to state a claim, the Court accepts as true O'Neal's allegations in her first amended complaint. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). When analyzing personal jurisdiction, the Court may consider the complaint itself as well as documents attached to the complaint, documents that are referred to in the complaint, and any additional facts set forth in a party's opposing brief so long as the facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)); *see also Purdue Rsch. Found.*, 338 F.3d at 782 ("[A] court may receive and weigh affidavits to determine whether it has personal jurisdiction.") (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

O'Neal began working as an Operations Specialist for Waste Management, or "WM," in January 2022.[1] [24] ¶ 16. Donte Love was her direct supervisor beginning in August 2022. *Id.* ¶ 20. While Love was O'Neal's supervisor, he subjected her to

---

[1] O'Neal alleges that "[a]t all relevant times herein, Plaintiff was employed by Defendant WMIL and WMI as an employee for the purposes of Title VII." [24] ¶ 11. Thus, for the time being, the Court refers to these two entities collectively as "WM" or "Waste Management." Later on in the opinion, the Court addresses whether O'Neal has sufficiently pled that WMI can be held liable under a joint-employer theory of liability.

"continuous, repeated sexual and romantic advances, differential treatment, [and] derogatory behavior" on account of her sex. *Id.* ¶¶ 22, 25. After O'Neal rejected Love's romantic advances, Love "began retaliating against [O'Neal] by denying her raise[s], intentionally changing her schedule to be more inconvenient, and denying her Paid Time Off." *Id.* ¶ 96. Love also "subjected [O'Neal] to unfair and harsh disciplinary actions compared to other similarly situated employees." *Id.*

O'Neal eventually applied for short-term disability leave "due to the anxiety, harassment, and stress caused by Love's inappropriate conduct and [WM's] indifference and lack of corrective action." *Id.* ¶¶ 147, 152. After several failed attempts to extend her leave, *see id.* ¶¶ 158–60, in December 2023 O'Neal agreed to return to work so long as she was not assigned to work with Love. *Id.* ¶ 161. Later that month, O'Neal received a letter stating that her health insurance would end because she was being terminated. *Id.* ¶ 164. O'Neal says she was terminated in retaliation "for making complaints to Waste Management's HR department about Love's sexual harassment." *Id.* ¶ 28.

O'Neal alleges that Jennifer Quinn—a WMIL human resources employee—initially handled her complaints but that they were later "referred out to and thereafter handled by Defendant WMI." *Id.* ¶¶ 44–47. In particular, O'Neal puts forth a text message from Quinn discussing that someone would "reach out to [her] from corporate regarding [her] concerns." *Id.* ¶ 48; *see also* [41-1] at 4. In a subsequent text, O'Neal stated the following:

> An investigator from the corporate team wants to get into more detail with you. please make sure to return that call or answer when you see

it. (they are remote – it may not be from Texas. They technically reported into corporate, but many of them work all over the country.) [24] ¶ 48; *see also* [41-1] at 4.

O'Neal says that she "was thereafter in communication with WMI in connection with her complaints of sex harassment/discrimination." [24] ¶ 50. When WMI concluded its investigation, O'Neal received a letter signed by Oliver Espinosa— an investigator who identified himself in connection with WM's "Investigation Center of Excellence"—informing her that the investigation was unable to substantiate her complaints. *Id.* ¶¶ 54–55, 165; *see also* [41-1] at 2. In his letter, Espinosa also referenced "WM policies," that "leadership was informed" of his investigation's findings, that "WM takes all alleged violations … seriously," and that "[p]articipants in the investigation are protected by Waste Management's zero-tolerance retaliation policy." [41-1] at 2. In addition, Espinosa's letter displays the WM logo, lists the sender's name as "WM," and lists the sender's address as "800 Capitol Street, Suite 3000, Houston Texas, 77002." [24] ¶ 56; [41-1] at 2. O'Neal also pleads upon information and belief that "Oliver Espinosa is a WMI employee or otherwise works under the management, control or authority of WMI." [24] ¶ 58.

In July 2024, O'Neal filed the present suit against WMI and Love, bringing claims for (1) sexual harassment under Title VII and the IHRA (Count I), (2) retaliation under Title VII and the IHRA (Count II), (3) assault and battery (Count III), and (4) violation of the IGVA (Count IV). *See generally* [3]. In response to WMI's motion to dismiss, O'Neal amended her complaint several months later to add WMIL as a defendant. [24]. Only Love has answered O'Neal's amended complaint. [34]. Now

6

before the Court is the WM entities' partial motion to dismiss the amended complaint pursuant to Rules 12(b)(2) and 12(b)(6). [40].

## DISCUSSION

WMI first moves to dismiss all of O'Neal's claims against it pursuant to Rule 12(b)(2) for lack of personal jurisdiction. [40] at 5–8. In the alternative, WMI argues O'Neal has not stated a claim on the merits because it is not liable as a joint employer. *Id.* at 9–14. Both WM entities separately move to dismiss O'Neal's IGVA claim in Count IV. *Id.* at 14–15. The Court considers each argument in turn.

### A. O'Neal Has Made a Prima Facie Case for Specific Personal Jurisdiction Over WMI.

A plaintiff may demonstrate personal jurisdiction over a defendant through either general or specific jurisdiction. *See Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe*, 326 U.S. at 317). In contrast to general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (cleaned up).

The Court begins with general jurisdiction. "There are two 'exemplar bases' where an organization is 'essentially at home' for general-jurisdiction purposes: its state of incorporation and principal place of business." *Tagliere v. Horseshoe Hammond, LLC*, No. 22 C 6176, 2023 WL 3886135, at *2 (N.D. Ill. June 8, 2023)

7

(quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Neither applies here—WMI is incorporated in Delaware and its principal place of business is in Texas. [18-1] ¶ 3.

O'Neal nonetheless argues that general jurisdiction exists. She points to the following: (1) "regular communication between" WMI and WMIL, (2) "a belief that WMI controls certain aspects of employee benefits and compensation," and (3) WMI's role in investigating O'Neal's complaints of sexual harassment. [41] at 4. These contentions fall well short of establishing that WMI is "essentially at home" in Illinois. *Mobile Anesthesiologists Chi.,* 623 F.3d at 444. This is especially so in light of the undisputed facts WMI offers in the declaration of Courtney Tippy, WMI's Corporate Secretary. *See generally* [18-1] ¶ 6. There, Tippy states that WMI does not "offer or provide any good or services to or conduct business with customers" and has no employees working in Illinois. *Id.* ¶¶ 6–7; *see also Holman v. AMU Trans, LLC*, No. 14 C 04407, 2015 WL 3918488, at *3 (N.D. Ill. June 25, 2015) (finding a lack of general jurisdiction where there was "no evidence that [defendant] sold or manufactured goods or services" in the forum state and defendant had no offices or employees there). Tippy also says in her declaration that "[p]ersonnel decisions with regard to employees of the operating subsidiaries are managed at the local level and not by WMI." [18-1] ¶ 11. Moreover, she says that "WMI is a holding company that conducts substantially all operations through its subsidiaries." *Id.* ¶ 5. Without more, O'Neal has not made a prima facie case that WMI's contacts with Illinois are so "continuous and systematic" as to render it at home here. *See Daimler*, 571 U.S. at

8

138 (quoting *Int'l Shoe*, 326 U.S. at 317); *see also Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 698 (7th Cir. 2015) ("[T]he Due Process Clauses … permit courts, federal and state, to exercise general jurisdiction only when 'the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit … *on causes of action arising from dealings entirely distinct from those activities.*'") (quoting *Daimler*, 571 U.S. at 127) (emphasis in original).

The Court next considers whether it may exercise specific jurisdiction over WMI. To do so, three essential requirements must be met. *See NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 623 (7th Cir. 2022). First, "the defendant's contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state." *Id.* (quoting *Curry*, 949 F.3d at 398). Second, "the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities." *Id.* (quoting *Curry*, 949 F.3d at 398). And third, "any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.* (quoting *Curry*, 949 F.3d at 398). "For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quoting *Walden*, 571 U.S. at 284). The relationship between the defendant and the forum state must also "arise out of contacts that the 'defendant *himself*' creates with the forum …." *Id.* (quoting *Walden*, 571 U.S. at 284).

WMI argues that specific jurisdiction cannot exist because Tippy says in her declaration "that WMI has no employees whatsoever and did not employ the investigator and Human Resources representatives she claims were involved in responding to her concerns." [42] at 2. WMI further contends that O'Neal "refus[es] to grapple" with Tippy's declaration and "produc[es] no supporting affidavit or evidence" that WMI was involved in investigating her complaints. *Id.* at 2–3.

The Court disagrees and finds that O'Neal has introduced evidence sufficient to establish a factual dispute over whether an employee from WMI investigated her claims. In support of her contention that WMI "was involved in the investigation of Plaintiff's sexual harassment/discrimination claim," *see* [41] at 5, O'Neal puts forth texts from Quinn relaying that someone from "corporate" would be reaching out to her to discuss her complaints. [41-1] at 4; *see also id.* (Quinn describes the investigator as being an individual "from the corporate team" and "report[s] into corporate"). WMI counters that Quinn's text messages do "not even mention WMI" and argues that O'Neal's assertion of WMI's involvement is "pure conjecture." [42] at 3. But it is not conjecture to infer that a WMIL employee would use the term "corporate" to refer to the employees of a parent company. *See* [41-1] at 4. This is especially so given Quinn's representation that the employees at corporate are "remote" and that "many of them work all over the country. *Id.*; *contra* [18-2] ¶ 2 (describing how WMIL employees, by contrast, "run WMIL's day-to-day operations" and oversee the "day-to-day work, job duties, responsibilities, tasks, and functions of Operations Specialists within the State of Illinois").

O'Neal also submits evidence that an "Investigator" with "WM's Investigation Center of Excellence" was involved in the investigation process. *See* [41-1] at 2 (Espinosa's letter to O'Neal). O'Neal pleads upon information and belief that the investigator, Espinosa, "is a WMI employee or otherwise works under the management, control or authority of WMI" and that the "Investigation Center of Excellence, among other HR functions, serve[s] the Waste Management network of subsidiaries on a national basis and conducts HR investigations anywhere in the nation where they may arise, including Illinois." [24] ¶¶ 52, 58. Although this evidence does not definitively establish that Espinosa is a WMI employee, that the Investigation Center of Excellence includes "WM" and not "WMIL" in its title suggests that the entity could very well be centralized so that it oversees all the WM subsidiaries. This inference is further supported by Espinosa's references in his letter to "WM policies," the fact that "leadership was informed of [his] findings," and "Waste Management's zero-tolerance retaliation policy." *See* [41-1] at 2.

Recognizing that WMI bears no burden here, the Court still notes that WMI has not submitted any evidence suggesting that the Investigation Center of Excellence is part of WMIL or some other WM-affiliated entity that is not WMI. WMI also explains that "WM" is part of a service mark "used in connection with the offering of waste services *throughout the United States*" and "to show affiliation with Waste Management, Inc." [18-1] ¶ 5 (emphasis added), making it less likely that Espinosa used letterhead that is specific to WMIL rather than more broadly reflective of an affiliation to a parent company.

11

True, Tippy asserts in her declaration that WMI "does not have any employees at all" and therefore could not have conducted any investigation into O'Neal's claims. [18-1] ¶ 7. But the evidence just discussed raises at least some doubt as to the completeness of her assertion (as does the declaration's silence on the identity of Espinosa's employer). Because the Court "resolve[s] any factual disputes in [O'Neal's] favor" for purposes of the personal jurisdiction analysis, based on the record before it, the Court proceeds with the understanding that Espinosa is a WMI employee and that WMI investigated the claims underlying this suit. *uBID*, 623 F.3d at 423–24; *see also N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (courts "resolve factual disputes in the plaintiff's favor when evaluating whether [a prima facie case] has been made").

As for the investigation itself, WMI does not attempt to argue that such activity is insufficient to meet the first two prongs of the two-part test to establish specific jurisdiction. *See* [42] at 3–5. Nor do any of the cases WMI cites stand for this proposition. *See id.* at 4. On balance, the Court finds that WMI's involvement via its investigation sufficient, especially given that O'Neal need only make a prima facie case in the absence of an evidentiary hearing. *See Curry*, 949 F.3d at 392–93. Here, O'Neal has submitted evidence that after lodging her grievance against Love, a WMI employee reached out to her to set up a time to discuss her claims, talked with her on the phone, investigated her reported concerns (almost certainly by reaching out to other WMIL employees based in Illinois), and notified O'Neal that her concerns were not substantiated. *See supra* at 10–11. "Even without a physical presence in Illinois,

email, mail, and phone communication may establish minimum contacts." *Elorac, Inc. v. Sanofi-Aventis Canada Inc.*, No. 14-CV-1859, 2014 WL 7261279, at *8 (N.D. Ill. Dec. 19, 2014) (citing *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 493 (7th Cir. 2014)); *see also Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc.*, 906 F.2d 276, 283–84 (7th Cir. 1990) (finding plaintiff established personal jurisdiction where defendants "reached out" to plaintiffs through telephone calls and mailings). The very fact of the investigation ties WMI to the Illinois-based conduct, as it demonstrates a degree of authority to address it, and the results of the investigation could have also impacted WMIL's personnel decisions with consequences for WMIL employees in Illinois. *Contra Rogers v. City of Hobart*, 996 F.3d 812, 820 (7th Cir. 2021) (no specific jurisdiction where defendant "did not undertake any affirmative action in Illinois, or any action purposefully designed to have an effect within Illinois").

In short, by reaching into Illinois to investigate Illinois-based conduct, WMI "should have reasonably anticipated being haled into court in Illinois" for litigation arising out of that conduct. *See Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 764 (7th Cir. 2008). And those contacts were suit-related. This is particularly true where the litigation encompasses O'Neal's allegation that "Waste Management's HR department" and "Waste Management's management" took insufficient action to address her grievances with Love. *See* [24] ¶¶ 130, 186, 189, 223. WMI's contacts with Illinois were not so "random, fortuitous, or attenuated" that it should not be subject to jurisdiction here. *Burger King*, 471 U.S. at 480.

13

The Court is likewise satisfied that requiring WMI to defend itself in Illinois does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. This inquiry considers "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies.'" *Purdue Rsch. Found.*, 338 F.3d at 781. Here, the burden on defendants is low. Defendants WMIL and Love are both located here, and WMI has retained the same counsel as these other defendants. *See* [10]; [14]; [31]; [32]. If it is true that "WMI is a holding company that conducts substantially all operations through its subsidiaries," *see* [18-1] ¶ 5, it is also more efficient for WMI to be grouped into a single suit with WMIL. This Court also has a particular interest in the resolution of a federal employment dispute that occurred among Illinois residents in Illinois.

Because O'Neal has made a prima facie case of personal jurisdiction, the Court will consider whether WMI can be liable under the joint-employer theory of liability.

## B. O'Neal Has Not Stated a Claim Against WMI Under the Joint-Employer Theory of Liability.

In the alternative, WMI moves to dismiss all claims against it on the grounds that O'Neal fails to plead an employer relationship with WMI. *See* [41] at 11. Although O'Neal asserts in her complaint that she was employed by both WMI and WMIL, *see* [24] ¶ 11, she admits in her response brief that "WMI was not involved in [her] day-to-day work." [41] at 7. She therefore must show that WMI can be liable

14

under a single- or joint-employer theory of liability. *See Love v. JP Cullen & Sons, Inc.,* 779 F.3d 697, 702 (7th Cir. 2015).

O'Neal begins by arguing that WMI is liable under the single-employer theory of liability, otherwise known as the integrated enterprise theory. *See* [41] at 5–6; *see also Rogers v. Sugar Tree Prods., Inc.*, 7 F.3d 577, 582 (7th Cir. 1993), *abrogated by Papa v. Katy Indus., Inc.*, 166 F.3d 937 (7th Cir. 1999). But the Seventh Circuit "no longer applies the 'integrated enterprise' test to Title VII claims." *Worth v. Tyer*, 276 F.3d 249, 260 (7th Cir. 2001) (citing *Papa*, 166 F.3d at 941–43). Instead, the Circuit has offered three circumstances in which a parent can be liable for the acts of its affiliates: "(1) where the circumstances were present for piercing the corporate veil, (2) where the corporation was splintered into affiliates in an effort to avoid liability under the anti-discrimination laws or (3) where the parent directed the discriminatory act or policy at issue." *LaBouve v. Boeing Co.*, 387 F. Supp. 2d 845, 850 (N.D. Ill. 2005) (citing *Papa*, 166 F.3d at 941). O'Neal does not argue that any of these situations apply, and the Court is under no obligation to construct her arguments for her. *See Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995) ("This court has no duty to research and construct legal arguments available to a party."). Thus, to establish that WMI is liable under Title VII and the IHRA,[2] O'Neal must show that WMI and WMIL are joint employers.

---

[2] "Illinois courts apply the federal Title VII framework to IHRA claims." *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016). The Court therefore will apply the same framework to determine whether WMI can be liable as a joint employer under both Title VII and the IHRA.

When more than one entity is alleged to be involved in the employment relationship, a Court applies the five factors from *Knight v. United Farm Bureau Mutual Insurance Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991), to determine whether an entity is a joint employer for Title VII purposes. *See Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 905 (7th Cir. 2018). These factors include:

> [T]he extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Knight*, 950 F.2d at 378–79. "The most important of these factors is the ability to supervise and control the employees." *Johnson*, 892 F.3d at 905 (citing *Love*, 779 F.3d at 702). Of the factors that indicate control over an employee, "the ability to hire and fire ranks as most significant." *Id.* (citing *Love*, 779 F.3d at 702).

O'Neal's complaint largely lacks allegations related to the second through fifth *Knight* factors. She does plead upon information and belief that WMI "manages, controls, and administers" "certain employee benefits" and "certain aspects of [her] compensation," *see* [24] ¶¶ 41–43, but she only provides blanket assertions in doing so, *see McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to the presumption of truth.") (citing *Iqbal*, 556 U.S. at 678–80). In any case, a "plaintiff cannot maintain a valid Title VII claim against a defendant based solely on the defendant's involvement in administrative tasks related to the plaintiff's

employment." *Shah v. Littelfuse Inc.*, No. 12 CV 6845, 2013 WL 1828926, at *4 (N.D. Ill. Apr. 29, 2013); *see also Clifford v. Patterson Cos., Inc.*, No. 08 C 0828, 2009 WL 3852447, at *9–10 (N.D. Ill. Nov. 18, 2009) (parent company not plaintiff's joint employer despite the fact that parent company issued plaintiff's paychecks, awarded him company stock, referred to him as an employee in the stock agreement, invited him to participate in a company plan, and advised him of confidentiality obligations).

More importantly, O'Neal's complaint lacks any non-conclusory allegations suggesting that WMI controlled or supervised her employment. O'Neal pleads that "WMI exerts substantial control over certain aspects of [her] employment, including her benefits and Human Resources inquiries." *See* [24] ¶ 63. But the complaint offers no details about how this alleged control over O'Neal manifested itself. *See McCauley*, 671 F.3d at 616. O'Neal does not plead, for example, that she was supervised by anyone at WMI. Nor does she plead that anyone at WMI determined her salary or hours or otherwise directed her day-to-day activities. As referenced above, O'Neal even admits in her response brief that "WMI was not involved in [her] day-to-day work." [41] at 7; *see also Shah*, 2013 WL 1828926, at *6 (defendant not liable as joint employer where plaintiff had not pled facts suggesting it "exercised any authority or control over [plaintiff's] co-workers, supervisors, or any other [ ] employees, much less the individuals that allegedly harassed him"); *Clifford*, No. 08 C 0828, 2009 WL 3852447, at *10 (defendant not liable as joint employer where plaintiff had not shown it "exercised any control over [plaintiff's] daily activities or workload"); *Kim v. StoneX Grp. Inc.*, No. 22-CV-02392, 2022 WL 17082574, at *3 (N.D. Ill. Nov. 18, 2022)

(plaintiff adequately pled defendant was joint employer where he alleged that defendant had the power to fire him, employed his supervisor, and issued him paychecks).

A defendant company may also be considered a joint employer if it "directed the discriminatory act, practice, or policy of which the employee is complaining." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1088 (7th Cir. 2008). But as already noted, O'Neal does not advance this argument in her opposition brief; nor has she pled that WMI directed the discriminatory harassment or retaliation she maintains that she experienced on the job. Indeed, O'Neal's complaint asserts that Espinosa completed his investigation on February 23, 2024, nearly two months *after* O'Neal found out she was being fired. [24] ¶¶ 164–65. The Court therefore cannot plausibly infer from O'Neal's allegations that through its investigation of her complaints, WMI influenced, let alone directed, the decision to fire her.

O'Neal asserts two additional ways in which WMI supposedly controlled O'Neal's employment, but neither is persuasive. First, she points to the fact that both WMI and WMIL employ Tippy as a Corporate Secretary. *See* [41] at 7. But O'Neal has not offered any authority for the proposition that a single shared employee (especially one who is divorced from the day-to-day operations of the company) amounts to the control required to plead a joint-employer relationship. Second, O'Neal points to the fact that WMI and WMIL share the same headquarters in Texas. *See id.* at 7; *see also* [24] ¶ 32. The Court does not see how the mere fact that two entities share a physical headquarters amounts to the requisite control, and O'Neal

18

again has provided no support for such a proposition. For these reasons, O'Neal fails to adequately plead WMI was her joint employer for the purposes of her Title VII and IHRA claims.

As for O'Neal's state-law claims, Illinois courts apply a similar legal framework. The test for the existence of joint employers in Illinois "is whether 'two or more employers exert significant control over the same employees-where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment.'" *Vill. of Winfield v. Ill. State Lab. Rels. Bd.*, 176 Ill. 2d 54, 60 (1997) (quoting *Orenic v. Ill. State Lab. Rels. Bd.*, 127 Ill.2d 453, 474 (1989)). "Relevant factors to consider in making this determination include the 'putative joint employer's role in hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job.'" *Id.* (quoting *Orenic*, 127 Ill.2d at 475).

For the same reasons already discussed in the Title VII context, O'Neal does not meet this standard and therefore cannot proceed against WMI with respect to her state-law claims.

For these reasons, the Court grants WMI's motion to dismiss Counts I through IV without prejudice.

### C. WMI and WMIL Cannot Be Sued Under the IGVA.

O'Neal also brings an IGVA claim against all defendants. *See* [24] ¶¶ 193–230. The IGVA creates a civil cause of action for "[a]ny person who has been subjected to

19

gender-related violence as defined in [the IGVA]" against "a person or persons perpetrating that gender-related violence." 740 ILCS 82/10. WMI and WMIL move to dismiss O'Neal's IGVA claim on the grounds that they are not "persons" subject to liability under the plain language of the statute. [40] at 14–15.

O'Neal does not dispute that WMI and WMIL are not "persons" for the purposes of imposing liability under the IGVA. [41] at 8. Instead, O'Neal contends that they can be held liable as employers under a January 2024 amendment to the IGVA. *Id.* That amendment added employer liability for "gender-related violence committed in the workplace by an employee or agent of the employer when the interaction giving rise to the gender-related violence arises out of and in the course of employment with the employer." 740 ILCS 82/11.

O'Neal alleges in her amended complaint that defendants' unlawful conduct occurred between August 2022 and December 2023. [24] ¶ 21. Because the amendment only became effective January 1, 2024, *see* 740 ILCS 82/11, O'Neal must show that the IGVA's employer-liability amendment applies retroactively, *see generally Perry v. Dep't of Fin. & Pro. Regul.*, 423 Ill.Dec. 848 (2018) (laying out the procedure for determining whether to apply an amendment to an Illinois statute retroactively). O'Neal does not explain in her response brief why the amendment is retroactive. *See* [41] at 8; *see also Freeland v. Enodis Corp.*, 540 F.3d 721, 731 (7th Cir. 2008) ("[A]rguments not raised before the district court are waived.").

In any case, several other district courts have found that the IGVA's employer-liability amendment does not apply retroactively, and the Court finds their analyses

20

persuasive. *See Rattunde v. Scores Chi. Gentleman's Club*, No. 23 C 14706, 2024 WL 4555336, at *3 (N.D. Ill. Oct. 23, 2024) ("The new requirements, rights, and duties imposed on employers by the employer amendment prohibits retroactive application."); *see also Hill v. Target Corp.*, No. 24 C 341, 2025 WL 919614, at *12 n.4 (N.D. Ill. Mar. 26, 2025); *Equal Emp. Opportunity Comm'n v. Sis-Bro Inc.*, No. 24-CV-968-JPG, 2025 WL 213992, at *4 (S.D. Ill. Jan. 16, 2025). Count IV is therefore dismissed with prejudice as to WMI and WMIL.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [40] is granted in part and denied in part. Counts I through III against WMI are dismissed without prejudice because O'Neal has not adequately pled an employment relationship with WMI. Count IV is dismissed against WMI and WMIL with prejudice because they are not "persons" under the IGVA and the statute's January 2024 amendment does not apply retroactively.

The Court grants O'Neal leave to file a second amended complaint on or before 7/3/25 if she can cure the deficiencies with Counts I through III against WMI while still complying with her Rule 11 obligations. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). If O'Neal elects not to file a second amended complaint by 7/3/25 the dismissal of those claims against WMI will convert to a dismissal with prejudice.

The parties are directed to appear for a status hearing on 7/17/25 at 9:30 a.m. By 7/10/25, the parties are directed to submit a joint status report with proposed next

steps in this matter, including a joint proposed discovery plan and their interest in a settlement conference.

_____
Georgia N. Alexakis
United States District Judge

Date:  6/5/25